UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHERYL L. HOUSE,

                    Plaintiff,

          V.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

**REPORT AND
RECOMMENDATION**

09-CV-913
(NAM/VEB)

## I. INTRODUCTION

In April of 2006, Plaintiff Sheryl L. House filed an application for disability insurance benefits ("DIB") under the Social Security Act.  Plaintiff alleges that she has been unable to work since September of 2004 due to multiple physical impairments.  The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorneys, Conboy McKay Bachman & Kendall, LLP, Lawrence D. Hasseler, Esq., of counsel, commenced this action for judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 13).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for DIB on April 13, 2006. (T at 46).[1]  The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held before ALJ J. Michael Brounoff on October 21, 2008, in Watertown, New York. (T at 605).  Plaintiff appeared with her attorney and testified. (T at 612-648).

On February 20, 2009, ALJ Brounoff issued a written decision finding that Plaintiff was not disabled and denying her application for benefits. (T at 13-28).  The ALJ's decision became the Commissioner's final decision on July 31, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 6-9).

Plaintiff, through counsel, timely commenced this action on August 10, 2009. (Docket No. 1).  The Commissioner interposed an Answer on November 23, 2009. (Docket No. 8).  Plaintiff filed a supporting Brief on January 7, 2010. (Docket No. 10).  The Commissioner filed a Brief in opposition on February 2, 2010. (Docket No. 12).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and this case be dismissed.

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

### III. DISCUSSION

**A.      Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n. 5; <u>Ferraris v. Heckler</u>, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2011.  He further found that Plaintiff had not engaged in substantial gainful activity since September 24, 2004, the alleged onset date. (T at 14).

The ALJ concluded that Plaintiff had the following impairments, which he considered "severe" under the Act: cervical degenerative disc disease, minimal anterolisthesis at C6-7, right shoulder tendonitis, degenerative change of the lumbrosacral spine with radiation into the right lower extremity, bilateral right foot tendinitis, right heel spur, tenosynovitis of the bilateral hands with surgery of the right fourth finger, osteoarthritis, rheumatoid arthritis, and obesity. (T at 15).

However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 19).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform

work between the sedentary and light ranges of work.  Specifically, the ALJ found that Plaintiff could lift/carry 10 pounds occasionally, lift/carry10 pounds frequently, stand/walk for 4 to 5 hours in an 8-hour workday, and sit without limitation.  The ALJ indicated that Plaintiff should not climb ladders or scaffolds, crawl, or work in temperature extremes or be exposed to vibrations.  Although the ALJ found that Plaintiff could frequently handle and finger items, he concluded that Plaintiff was limited to occasional overhead reaching with her right upper extremity. (T at 19).

The ALJ determined that Plaintiff was unable to perform her past relevant work as a hospital cook. (T at 26).  Considering Plaintiff's age (42 years old on the alleged onset date), education (high school), and residual functional capacity, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T at 26).  Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined under the Social Security Act, from September 24, 2004 (the alleged onset date) through February 20, 2009 (the decision date).  As noted above, the ALJ's decision became the Commissioner's final decision on July 31, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 6-9).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  She offers six (6) principal arguments in support of this position.  First, Plaintiff asserts that the ALJ did not properly assess the severity of one of her impairments.  Second, Plaintiff contends that her neck impairment met or medically equaled one of the impairments set forth in the Listings.  Third, Plaintiff argues that the ALJ did not properly apply the treating physician's rule.  Fourth, Plaintiff asserts that the ALJ did not adequately assess her residual functional

capacity.  Fifth, Plaintiff argues that the ALJ did not properly evaluate her credibility.  Sixth, Plaintiff challenges the ALJ's reliance on the Medical-Vocational Rules (the "Grids").  This Court will address each argument in turn.

### a.   Severity of Impairment

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March

7

19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In the present case, Plaintiff contends that the ALJ should have concluded that Plaintiff's hidradenitis suppurativa[4] was a severe condition.  Dr. Marylene Duah, an infectious disease specialist, diagnosed a "severe case of hidradenitis supprativa" and noted that Plaintiff was on chronic suppressive therapy using a prescription drug called minocycline. (T at 357).  Dr. Duah recommended weight loss, an increase in dosage upon an outbreak, with possible incision and drainage of the lesions or boils.  (T at 357).  Plaintiff testified that she experiences periodic episodes of boils, including boils on her legs that make it "almost impossible to try to walk." (T at 632).

The ALJ concluded that Plaintiff's hidradenitis supprativa was not a severe impairment.  This Court finds no reversible error with regard to this conclusion.  First, Plaintiff has suffered from this condition for many years, including years during which she worked full-time. (T at 357, 228-29).  Plaintiff testified that the condition did not prevent her from working on a part-time basis and that she was able to make up any time missed due to incisions and drainage. (T at 632-33).  Although the medical record certainly documents treatment with respect to this impairments, no provider identified any impact on Plaintiff's ability to perform basic work activities.

Second, because the ALJ concluded that Plaintiff had established other impairments that were "severe" as defined under the Social Security Act (i.e. cervical degenerative disc disease, minimal anterolisthesis at C6-7, right shoulder tendonitis, degenerative change of the lumbrosacral spine with radiation into the right lower extremity, bilateral right foot

---

[4]Hidradenitis suppurativa is a chronic disease that "presents with painful, inflamed lesions . . . ." (T at 268).

tendinitis, right heel spur, tenosynovitis of the bilateral hands with surgery of the right fourth finger, osteoarthritis, rheumatoid arthritis, and obesity) and continued with the sequential analysis, any arguable error in his findings with respect to hidradenitis supprativa at step two of the analysis could be considered harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

### b.    The Listings

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see

20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled."). The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

Plaintiff argues that she has an impairment that meets or medically equals the impairment listed at §1.04 (A) of the Listings.  That section, which addresses disorders of the spine, requires a diagnosed spine disorder with: evidence of nerve root compression characterized by (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, and (3) motor loss (atrophy with associated muscle weakness or muscle weakness)

10

accompanied by sensory or reflex loss. 20 C.F.R. Part 404, Subpart P, Appendix 1, §1.04 (A).

The ALJ concluded, in summary fashion and without specific discussion of §1.04 (A) of the Listings, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (T at 19).

For the following reasons, this Court finds that the record contains substantial evidence sufficient to support the ALJ's implicit finding that the requirements of § 1.04 (A) were not satisfied.   Plaintiff clearly has a spine disorder.   The ALJ found Plaintiff's degenerative change of the lumbosacral spine to be a severe impairment. (T at 15). Likewise, it appears to be undisputed that Plaintiff's spine disorder results in compromise of the nerve root (T at 412); and that she suffers from neuro-anatomic distribution of pain (T at 287, 312, 414, 548) and limitation of motion in her spine. (T at 286-87, 294, 312, 556). Thus, the dispositive question is whether Plaintiff suffers from motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss.

Plaintiff points to the following evidence in support of her claim that she suffered motor loss with muscle weakness accompanied by sensory or reflex loss.  In March of 2006, Dr. Abdul Latif of North County Neurology noted complaints of numbness and tingling in Plaintiff's right arm, depending on positioning. (T at 286).   Dr. James Naughten, a consultative examiner, opined that Plaintiff's "speed agility" was "moderately decreased." (T at 294).   He also found that Plaintiff had a stiff gait and had moderate difficulty with heel/toe walking. (T at 294).   Dr. Naughten assessed strength in both arms as "4/5 proximally and distally." (T at 294).   Theresa Bach, a chiropractor, opined that Plaintiff's ability to engage in repetitive motion activities was "extremely limited[,] especially with

11

conditions affecting muscle and joint pain and mobility." (T at 569).

In this case, the reference to numbness and tingling in Dr. Latif's report was contained in the section labeled "subjective," indicating that the doctor was documenting Plaintiff's self-reported symptoms (as opposed to actual clinical findings). (T at 286). With regard to objective notes, Dr. Latif reported that Plaintiff did not appear in any discomfort and had normal muscle tone.  Dr. Latif indicated that "motor examination [did] not show any focal motor weakness in [Plaintiff's] upper or lower extremities." (T at 286).

Dr. Naughten noted "[n]o muscle atrophy" or "[s]ensory abnormality." (T at 294).  He also opined that Plaintiff had full range of motion in her elbows, forearms, wrists, and fingers bilaterally. (T at 294).  Notably, Dr. Naughten assessed no limitation as to sitting or standing; mild limitation with regard to lifting/carrying/handling objects; and mild to moderate limitation as to pushing/climbing/reaching with the right arm. (T at 296).  The comment from Dr. Bach, Plaintiff's chiropractor, concerning muscle and joint pain and mobility could have been related to Plaintiff's arthritis and, in any event, did not reference any sensory or reflex loss.  Moreover, as discussed further below, chiropractors are not acceptable medical sources under the Commissioner's Regulations and their assessments are not entitled to any special weight. See 20 C.F.R. § 404.1513(a); see also Diaz v. Shalala, 59 F.3d 307, 312-314 (2d Cir.1995).

"Conflicts in evidence . . . are for the Commissioner to resolve. White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id.

Thus, based upon the foregoing, this Court finds that the record contains evidence

sufficient to sustain the conclusion that Plaintiff does not have motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, as required to satisfy the impairment listed in §1.04 (A) of the Listings.

Accordingly, this Court finds no reversible error with regard to this aspect of the ALJ's decision.

### c.   Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

F.3d 496, 503 (2d Cir. 1998).

In the present case, Michael Hinman, Plaintiff's treating physician's assistant, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form on October 31, 2008. Mr. Hinman opined that Plaintiff could occasionally lift up to 20 pounds and never more than that. He further indicated that Plaintiff could occasionally carry up to 10 pounds, but never more than that. (T at 558). Mr. Hinman assessed that Plaintiff could sit for one hour, stand for 30 minutes, and walk for 15 minutes at one time without interruption. He opined that Plaintiff could sit for 4 hours in an 8-hour workday, stand for 1 hour, and walk for a total of 1 hour. (T at 559). With respect to the use of her hands, Mr. Hinman found that Plaintiff could occasionally reach, handle, finger, and feel; but never push or pull. (T at 560).

Dr. Bach, Plaintiff's treating chiropractor, completed the same form on October 23, 2008, and opined that Plaintiff could occasionally lift/carry up to 20 pounds, but never more than that. (T at 565). Dr. Bach concluded that Plaintiff could sit/stand/walk for 15 minutes at any one time without interruption and for a total of 2 hours in an 8-hour workday. (T at 566). Dr. Bach assessed that Plaintiff was limited to occasional reaching, handling, fingering, feeling, pushing and pulling. (T at 567). As noted above, Dr. Bach indicated that Plaintiff's ability to perform activities involving repetitive motion was "extremely limited." (T at 569). She also noted Plaintiff's low pain tolerance and muscle soreness associated with repetitive activities. (T at 570).

Plaintiff contends that the assessments provided by Mr. Hinman and Dr. Bach were consistent with objective clinical data, including MRI and CT scans, and should accordingly have been given significant (if not controlling) weight. (T at 289-90, 310, 319-20, 361).

14

The ALJ afforded "limited weight" to the opinions provided by Mr. Hinman and Dr. Bach.  For the following reasons, this Court finds that the ALJ's conclusion in this regard was supported by substantial evidence and in accord with applicable law.

First, not all treating health care providers are considered "treating sources" under the applicable Regulations.  A "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502.

There are five categories of "acceptable medical sources." 20 C.F.R. § 404.1513 (a). Chiropractors and physician's assistants are not included among the "acceptable medical sources" and their opinions are not entitled to any special weight.  Rather, chiropractors and physician's assistants are listed among the "other medical sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work. 20 C.F.R. § 416.913 (d)(1).  The Second Circuit has stated that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." Diaz, 59 F.3d at 313-14.

Second, the significant limitations assessed by Mr. Hinman and Dr. Bach are inconsistent with Plaintiff's testimony concerning her exertional activities.  Plaintiff testified that, as of the hearing date, she was working as a home care aide. (T at 617).  Her job duties including assisting elderly clients with housekeeping chores, including general cleaning, laundry, sweeping, mopping, dusting, and vacuuming. (T at 253, 618).  Plaintiff prepared meals and helped a client dress and wash her hair. (T at 619).  Plaintiff is occasionally required to lift 5 pounds and believes she might be able to lift up to 10 pounds.

15

(T at 630, 642).  She worked approximately 16 hours per week on average (4 days a week, 4 to 5 hours a day), with some weeks of 20, 24, and 30 hours of work. (T at 260, 621, 630). Plaintiff held this position for 2 years as of the hearing date. (T at 623).  Her foot pain caused her to miss 2 days of work during the year preceding the hearing. (T at 634). Plaintiff also received unemployment benefits during the period of alleged disability, which required her to certify that she was ready, willing, and able to work. (T at 189-213).  The ALJ appropriately considered these facts when deciding to discount the extreme limitations assessed by Mr. Hinman and Dr. Bach.

Third, additional support for the ALJ's decision to discount the opinions of Mr. Hinman and Dr. Bach was provided by Dr. James Naughten, a consultative orthopedic examiner.  Dr. Naughten noted that Plaintiff appeared to be in no acute distress and was able to rise from her chair without difficulty. (T at 294).  Plaintiff's "speed agility" were "moderately decreased," she had a stiff gait, and "moderate difficulty walking on heels and toes." (T at 294).  Dr. Naughten found no limitation with regard to sitting or standing and a mild to moderate limitation as to walking. (T at 295-96).  He opined that Plaintiff would have a moderate limitation climbing stairs and mild limitation as to lifting, carrying, and handling objections. (T at 296).  Dr. Naughten assessed a mild to moderate limitation concerning Plaintiff's use of her right arm for pushing, climbing, and reaching. (T at 296).

A non-examining State Agency review consultant reviewed Plaintiff's medical records and opined that Plaintiff could frequently lift/carry 10 pounds, stand/walk for at least 2 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and push/pull in unlimited amounts. (T at 299).  The consultant indicated that Plaintiff was limited in terms of her ability to climb stairs and ramps and opined that she should avoid ladders, ropes,

scaffolds, and crawling. (T at 300).  The consultant further indicated that Plaintiff should avoid overhead reaching with her right arm. (T at 300).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

For the reasons stated above, this Court finds that the ALJ's decision to discount the assessments of Mr. Hinman and Dr. Bach was in accord with applicable law and supported by substantial evidence.

### d.    RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20

17

C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In the present case, the ALJ concluded that Plaintiff retained the residual functional capacity to perform work between the sedentary and light ranges of work.  Specifically, the ALJ found that Plaintiff could lift/carry 10 pounds occasionally, 10 pounds frequently, stand/walk for 4 to 5 hours in an 8-hour workday, and sit without limitation.  The ALJ indicated that Plaintiff should not climb ladders or scaffolds, crawl, or work in temperature extremes or be exposed to vibrations.  Although the ALJ found that Plaintiff could frequently handle and finger items, he concluded that Plaintiff was limited to occasional overhead reaching with her right upper extremity. (T at 19).

Plaintiff challenges the RFC assessment, pointing to the opinions provided by Mr. Hinman and Dr. Bach, which indicated a much greater degree of limitation.  In addition, Plaintiff points to the following evidence: Dr. Latif noted that Plaintiff experiences pain when using her right upper extremity (T at 286); Dr. Naughten assessed limited neck range of motion and diminished arm and leg strength (T at 294); Plaintiff's treatment for joint inflammation, including pain management injections (T at 310-23, 356, 361, 395-400, 490-91, 519); limitations resulting from chronic episodes of boils (T at 632-33); chronic fatigue (T at 329, 339, 341, 523, 556); and Plaintiff's need to change positions frequently due to pain. (T at 559, 566, 634, 642).

This Court finds that the ALJ's RFC determination is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.  As outlined above, The ALJ's determination was supported

18

by Plaintiff's description of her part-time work as a home care aide and by the assessments of Dr. Naughten and the State Agency review consultant.  Although the record clearly demonstrates consistent complaints of pain and other limitations, the record contains sufficient evidence to support the ALJ's RFC assessment.  While the record also indicates periodic complaints of fatigue, it does not contain an assessment by an acceptable medical source of work-related limitations related to fatigue.  Likewise, as discussed above, although Plaintiff's chronic boils certainly caused serious pain and required treatment, Plaintiff's testimony demonstrated that the condition was manageable and not inconsistent with full-time work.  Accordingly, this Court finds no reversible error with regard to this aspect of the ALJ's decision.

### e.    Credibility

Courts in the Second Circuit have determined pain is an important element in disability claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and

other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.  [Plaintiff's] daily activities;
2.  The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.  Precipitating and aggravating factors;
4.  The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.  Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.  Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.  Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's contentions are not credible, the ALJ must state

20

his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible. (T at 23). Plaintiff contends that the ALJ improperly discounted her testimony concerning her limitations. Specifically, Plaintiff asserts that the ALJ placed undue emphasis on her performance of part-time work, which (by the ALJ's own admission) did not rise to the level of substantial gainful activity. This Court finds Plaintiff's argument unavailing.

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

21

In this case, Plaintiff collected unemployment benefits during a portion of the period of alleged disability.  By applying for such benefits, Plaintiff affirmed that she was ready, willing, and able to work.  Moreover, the ALJ's consideration of Plaintiff's part-time work was entirely proper and supported his decision to discount Plaintiff's credibility.   See 20 C.F.R. §§ 404.1571, 416.971 (stating that even though part-time work does not constitute substantial gainful activity, it may show that a claimant is able to do more work than actually performed).  Furthermore, as discussed above, the ALJ's assessment of the limiting effects of Plaintiff's pain and other impairments was consistent with the opinions provided by Dr. Naughten and the State Agency review consultant.

There is no question that Plaintiff lives with serious pain, as the record documents frequent complaints in that regard.  However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A).

Accordingly, this Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).

### e.    Reliance on the Grids

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to (1) assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then (2) determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling."  Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age,

23

education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06). When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminish the claimant's work capacity beyond that caused by his or her exertional limitations. Id. A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15. "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.

In this case, the ALJ assessed Plaintiff's physical ability and concluded that Plaintiff retained the residual functional capacity to perform work between the sedentary and light

ranges of work. (T at 19). The ALJ found that Plaintiff's non-extertional impairments had little to no effect on her occupational base of unskilled sedentary and light work. (T at 27). Plaintiff was classified as a younger individual, with an RFC falling between sedentary and light work. (T at 27).  To determine whether jobs exist in the national economy that Plaintiff can perform, the ALJ used Medical-Vocational Rules 201.21, 201.22, 201.27, 201.28, and 201.29 as a framework and found Plaintiff not disabled.

Plaintiff challenges the ALJ's reliance on the Grids and suggests that the testimony of a vocational expert was necessary.  This Court finds no reversible error with regard to this aspect of the ALJ's decision.  As outlined above, the ALJ's consideration of the limiting effects of Plaintiff's impairments was supported by substantial evidence.  Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." White, 2008 WL 3884355, at *11 (citing Veino v. Barnhart, 312 F.3d at 586).

### IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers, the consultative examiners, and the non-examining consultant, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that

Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Dated:   February 29, 2012

       Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the**

Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 29, 2012

Victor E. Bianchini
United States Magistrate Judge